F I L E D
Clerk
District Court
JUL 12 2019
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| FRANCISCO Q. GUERRERO,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>VINCE ATTAO, *et al.*, in their official and personal capacities,<br><br>　　　　Defendants. | Case No.: 19-cv-00006<br><br>**DECISION AND ORDER ON SECOND SCREENING** |

## I.　INTRODUCTION

Francisco Q. Guerrero is a prisoner in the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI"). He is proceeding pro se and in forma pauperis with a civil rights complaint against fourteen CNMI Department of Corrections ("DOC") employees, in both their personal and official capacities. The Court dismissed Guerrero's original complaint with leave to amend on screening for failure to state a claim. (Order to Amend, ECF No. 2.) His First Amended Complaint (FAC, ECF No. 5) is now before the Court for screening. For the reasons stated below, the Court dismisses the FAC for failure to state a claim against seven Defendants, but grants Guerrero leave to amend a second time.

## II.　LEGAL STANDARD

The court is required to screen complaints brought in civil actions by prisoners seeking redress from governmental entities, officers, or employees. 28 U.S.C. § 1915A(a). If, after screening, the court

1

determines that the complaint is frivolous or malicious, fails to state a claim on which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, it must dismiss the complaint. 28 U.S.C. § 1915A(b).

A complaint fails to state a claim if it lacks a cognizable legal theory or does not allege sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must do more in a complaint than just state the elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Such legal conclusions must be supported by sufficient factual allegations. *Id.* A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts have an obligation in pro se civil rights cases to "construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, the court "will not supply elements that are not present in a pro se plaintiff's complaint." *Ross v. Williams*, 896 F.3d 958, 969 (9th Cir. 2018). Leave to amend should be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### III.   BACKGROUND

The facts as alleged in the FAC are consistent with the original complaint. Therefore, the Court will only briefly restate them here: On January 14, 2019, Guerrero was violently attacked by John Kileleman, another inmate who lived in the same open-bay section of the prison as Guerrero. (FAC at

2.) No corrections officers were present in the section at the time of the attack, despite the shouts of other inmates calling for officers to respond to the altercation. (*Id.*) Only after Kileleman kicked Guerrero down fifteen stairs did officers enter the section to help Guerrero. (*Id.*) After the attack, Guerrero attempted to call 911 from inside the prison without success. (*Id.*) He then called a friend and asked him to call 911 on his behalf. (*Id.*) DOC officials took Guerrero to the booking section of the prison to be seen by medics. (*Id.*) In the booking section, Guerrero also spoke with a police officer. (*Id.* at 3.) DOC officials brought Guerrero to the hospital for an x-ray and other medical checks. (*Id.*)

The next day, January 15, Guerrero spoke to Lawrence Pangelinan from the CNMI Attorney General's Office, who advised him that it was the role of the DOC's Professional Standard Unit (PSU) to investigate the incident. (*Id.*) That same day, Guerrero filed a request to speak with the PSU. (*Id.* at 10.) He also filed an inmate grievance form addressed to Commissioner Vince Attao on January 17. (*Id.* at 9.) On January 28, he filed a follow-up request with PSU officers Lt. Fred Billy, Lt. Marvin Seman, and Officer Lorraine Quitugua, asking for a response to his January 15 request. (*Id.* at 11.) On February 6, Guerrero met with Pangelinan for a second time. (*Id.* at 3.) Pangelinan took his statement and told him he would arrange for a meeting with the PSU. (*Id.*) Either that same day or the next, Guerrero went to the PSU office to discuss his complaint with Defendants Billy, Seman, and Quitugua. *(Id.)* The officers told him that they would look into his complaint. (*Id.*) However, Guerrero states that he never received any response or further information about the status of his complaint. (*Id.*at 6.)

On April 4, 2019, Guerrero filed his application to proceed in forma pauperis in this Court with a lawsuit against fourteen DOC officials under 48 U.S.C. §1983 for violations of his Eighth and Fourteenth Amendment rights, as well as tort claims against Kileleman. (ECF No. 1.) The Court

screened that complaint and found that Guerrero had stated a plausible failure-to-protect claim against six DOC Defendants. (Order to Amend at 6.) Three of these Defendants were the classification officers who Guerrero alleges were aware of Kileleman's mental instability and his violent history but still assigned him to an open pod. (Complaint at 13, ECF No. 4.) The other three were medical officers who Guerrero alleges knew that Kileleman was mentally unstable but did not have him evaluated. (*Id.*) As to the remaining eight DOC Defendants, the Court dismissed the complaint for failure to state a claim but with leave to amend to plead additional facts supporting claims of failure to protect and failure to supervise or train. (*Id.* at 11.) The Court dismissed the claim against Kileleman without prejudice for lack of subject matter jurisdiction. (*Id.*) On June 20, 2019, Guerrero filed his First Amended Complaint against the DOC Defendants only. (ECF No. 5.)

### IV. ANALYSIS

#### A. Failure-to-Protect Claims

It is well-established that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." (*Id*. at 834.) "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by

4

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting Farmer, 511 U.S. at 835.)

The Court previously found that Guerrero stated a claim for failure to protect against six Defendants: Joaquin Sablan, Manuela Guerrero, Rachel Rebuenog, Jose Castro, Laena Cabrera, and Eloy Dela Cruz. (Order to Amend at 6.) Guerrero included the same facts in his FAC, which are sufficient to plausibly allege an objective risk of serious harm from having an untreated, mentally unstable inmate with a history of violence against other inmates residing in the prison's general, open-bay section of the population, and subjective knowledge on the part of these six Defendants that could show deliberate indifference.

Guerrero also alleges that Keith Lizama, the officer assigned to his pod on the day of the attack, failed to protect him from Kileleman. In the order dismissing his original complaint, the Court found that Guerrero had not pleaded sufficient facts to state a claim against Lizama but granted him leave to amend his complaint. In the FAC, Guerrero alleges that Lizama was the corrections officer assigned to monitor and maintain the security in the section where Guerrero was attacked. (FAC at 7.) He further alleges that Lizama was not at his assigned post before and during the incident and he did not respond to inmates shouting for help during the incident. (*Id.*) Additionally, Guerrero alleges that Lizama was aware of Kileleman's mental health and violent history. (*Id.* at 8.) Read together, these allegations are sufficient to plausibly state a claim that Lizama was subjectively aware of the risk that Kileleman might violently harm another inmate and acted with deliberate indifference to Guerrero's safety by leaving his post.

//

### B. Failure-to-Supervise Claims

Supervisors cannot be held liable for the wrongful acts of subordinates under Section 1983 merely because of their supervisory role. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)) ("Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a § 1983 action."). However, a supervisor may be held liable if: (1) he or she is personally involved in the wrongdoing, or (2) there is a "sufficient causal connection . . . between the supervisor's unlawful conduct and the constitutional violation." *Id.* at 1074–75 (internal quotations omitted). "This causal connection can include: '1) [the supervisors'] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) [their] conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* at 1075 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id.* at 1085 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). For a failure-to-train claim, a plaintiff must show that the supervisor "was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 59 (2011)).

For example, a sheriff was not liable under a failure-to-train theory when a deputy sexually assaulted a woman because there was no allegation of a pattern of similar constitutional violations

6

(sexual assaults perpetrated by deputies) to demonstrate that the sheriff was deliberately indifferent in his failure to train deputies to not sexually assault members of the public. *Id.* In some limited circumstances, the failure to train might be so obvious that a pattern of violations is unnecessary to demonstrate deliberate indifference, such as sending armed police officers into the field "without training . . . on the constitutional limitation on the use of deadly force." *Id.* Conversely, a sheriff could be held liable for an attack on an inmate under a failure-to-supervise theory because he was repeatedly informed of incidents in which guards had failed to provide reasonable security to prevent inmate violence and he failed to take any corrective action. *Starr*, 652 F.3d at 1208–12. There, the sheriff received notice from the Department of Justice that there was a serious pattern of constitutional violations including abuse of inmates by deputies and inmate-on-inmate violence. *Id.* at 1209. He was advised of multiple inmate murders and assaults demonstrating a pattern of lax security. *Id.* at 1209–11. The Ninth Circuit held that these factual allegations were sufficient to state a claim for failure to supervise because the sheriff was aware or should have been aware of the constitutional violations by his subordinates, and he failed to take action to protect the inmates under his care. *Id.* at 1216.

A complaint that only alleges that a supervisor has failed in his or her duty to implement rules or to oversee subordinates does not state a claim, it merely states what the claim is – a failure to train or supervise. The Court informed Guerrero that his original complaint failed to state claims against the four DOC Defendants in supervisory roles, Commissioner Vince Attao, Pretrial Director Jose K. Pangelinan, Captain Pius Yaroitemal, and Shift Supervisor Romualdo Teregeyo, because he failed to allege any facts about what these Defendants did or did not do, other than their roles and responsibilities, that led to his injury. (Order to Amend at 8.)

In his FAC, Guerrero's claims against the four supervisors suffer from the same problem, an absence of factual allegations. Guerrero repeats the conclusory allegations that Defendants failed in their duties. (FAC at 4, 6–7.) He does not assert that these Defendants were personally involved in the wrongdoing. Nor does he plead facts that would permit the Court to infer a causal connection between these supervisors' conduct and the failure to protect Guerrero from Kileleman. He adds only one fact to his claims against Pangelinan, Yaroitemal, and Teregeyo: they knew that Kileleman was mentally unstable and had a history of violence against fellow inmates. (FAC at 4, 7.) That one fact alone is not sufficient to show a causal connection between the Defendants' actions and the constitutional violation. Therefore, Guerrero has not stated a claim for failure to train or supervise against Attao, Pangelinan, Yaroitemal or Teregeyo.

**C. Failure-to-Process-Grievance Claims**

Guerrero named three DOC Defendants in the Professional Standard Unit: Fred Billy, Marvin Seman, and Leanna P. Quitugua. He asserts that they failed to process and investigate his complaints regarding the attack and the failure of officers to perform their duties. (FAC at 6.) He alleges that PSU has done nothing about his complaint, and that "up to this day" "assigned section officers don't stay in their assigned post." (*Id.*) As the Court informed Guerrero in its Order to Amend, inmates do not have a constitutional entitlement to a specific prison grievance procedure. (Order to Amend at 8) (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)). Therefore, the failure to process a grievance alone is not a constitutional violation. However, an inmate may have a claim if his grievance involves an ongoing violation or danger and the corrections officer knowingly fails to respond to that request for help. *Henderson v. Muniz*, 196 F. Supp. 3d 1092, 1104 (N.D. Cal. 2016).

8

In the FAC, Guerrero does not allege any facts regarding an ongoing violation that these three Defendants were aware of and knowingly failed to respond to. The fact that these officers were unreceptive to his requests and have not responded to his complaint to date is not enough to state a claim under section 1983 for the injuries he sustained at the hands of Kileliman. Although he reports that assigned officers still do not stay in their assigned post, he does not mention if Kileliman, the source of his prior injury, is still with them in the open-bay section. Therefore, Guerrero has failed to state a plausible claim against Defendants Billy, Seman, and Quitugua.

**D. Injunctive Relief**

Guerrero seeks both injunctive relief and compensatory damages against the DOC Defendants. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clarke Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 185 (2000)). The basic requirements for injunctive relief are "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974). Past wrongs alone are insufficient to establish standing for an injunction. *Davidson*, 889 F.3d at 967. Instead, for injunctive relief, which is a prospective remedy, there must be a threat of actual and imminent injury, and not just the possibility of a future injury. *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). To be entitled to an injunction, a plaintiff arguing the threat of a repeated injury must demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Under the Prison Litigation Reform Act ("PLRA"), in order to grant "[p]rospective relief in any civil action with respect to prison conditions," a court must find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). "The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* The Ninth Circuit has interpreted this need-narrowness-intrusiveness requirement to mean that the injunctive relief ordered must "correct[ ] the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010). "The scope of injunctive relief is dictated by the extent of the violation established." *Id.* at 1072 (quoting *Lewis v. Casey*, 518 U.S. 343, 360 (1996)). If the wrongdoing is limited to only a few isolated incidents that affected a small number of plaintiffs, the scope of the injunction should also be limited to grant only the relief necessary. *Id.* Furthermore, the relief must be by the least intrusive means. "[T]he core concern of the intrusiveness inquiry . . . [is] whether the district court has 'enmeshed [itself] into the minutiae of prison operations,' beyond what is necessary to vindicate plaintiffs' federal rights." *Id.* at 1071 (quoting *Lewis*, 518 U.S. at 362).

Here, Guerrero alleges one incident of violence, directed at him and one other inmate. His FAC does not contain any allegation of a threat of repeated injury that is actual or imminent. Therefore, he has not demonstrated that he has standing to bring a claim for injunctive relief. That is not to say that Guerrero lacks standing completely. He need not show a future threat of injury to sue for damages, as he has done against all Defendants in their personal capacities. *See Lyons*, 461 U.S. at 111.

10

Furthermore, even if Guerrero can establish standing for injunctive relief, the Court finds that his specific request for relief does not meet the need-narrowness-intrusiveness requirement of the PLRA. In his original complaint, he requested a court order firing the DOC Defendants. (ECF No. 4 at 20.) In the FAC, Guerrero asks the Court to reassign Defendants to other positions within DOC. (FAC at 8.) While it is less drastic than his prior request, the Court finds that this relief is not narrowly drawn, necessary, or the least intrusive means to correct the specific harm Guerrero alleges.

## V. CONCLUSION

As stated above, Guerrero has failed to state a claim against seven Defendants. In addition, he has failed to establish a threat of actual and imminent injury necessary for injunctive relief. The Court will grant him an additional opportunity to cure the deficiencies in his complaint. If he chooses to file a Second Amended Complaint, Guerrero must allege sufficient factual content to state a claim under the standards set forth in this order.

The Court reminds Guerrero that an amended pleading supersedes the original pleading, which is then treated as if it did not exist. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citations omitted.) As he did in his FAC, Guerrero must replead all necessary factual allegations, all claims against every Defendant he intends to sue, and all remedies he seeks in the Second Amended Complaint. Additionally, any exhibits or documents he wants to include must be attached to the new complaint.

Accordingly,

1. The Court DISMISSES without prejudice the following seven Defendants because Guerrero has failed to state claim against them: (1) Commissioner Vince Attao, (2) Jose K.

Pangelinan, (3) Pius Yaroitemal, (4) Fred Billy, (5) Marvin Seman, (6) Leanna P. Quitugua, and (7) Romualdo Teregeyo, Jr.

2. The Court GRANTS Guerrero LEAVE TO AMEND his complaint. He may file a Second Amended Complaint **no later than August 2, 2019**. A Second Amended Complaint placed in outgoing prison mail by August 2, 2019 will be considered timely filed even if the Clerk receives it after that date.

If Guerrero does not timely file a Second Amended Complaint, the Court will order the U.S. Marshal to serve the FAC (ECF No. 5) on these seven Defendants only: (1) Joaquin Sablan, (2) Manuela Guerrero, (3) Rachel Rebuenog, (4) Jose Castro, (5) Laena Cabrera, (6) Eloy Dela Cruz, and (7) Keith Lizama.

IT IS SO ORDERED on this 12th day of July, 2019.

RAMONA V. MANGLONA
CHIEF JUDGE